IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Minjoo Cho Warner, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 25 C 14367 |
| | ) | |
| | ) | |
| Real ID, Inc., d/b/a CHCKED, | ) | |
| | ) | |
| Defendant. | ) | |

<u>Memorandum Opinion and Order</u>

To complete a job application, Minjoo Warner had to submit to a background check administered by Real ID, Inc. Real ID conducted that background check and then sent a batch of false, disparaging information to Warner's potential employer, who denied her application. Warner sued, and before me now is Real ID's motion to compel arbitration. For the reasons that follow, I grant that motion.

In 2024, Warner applied for a position as a certified nursing assistant and secured a job offer which was conditioned on a background check conducted by Real ID. In early 2025, Warner accessed Real ID's online platform to fill out forms related to the background check. When she did, she was presented with two screens; the first was titled "Give Your Consent" and the second, accessible after completing the first, was titled "Submit Your Application." The first is below:



ECF 14-4 at 2. Bold text at the top of the page reads "Complete Your Application," and then smaller bold text reads "Provide your consent then complete and submit the application form." The second section on the page (each section is set off by bold green text) reads "Consent Document," with a subtitle in ordinary text reading "Please review and agree to the document(s) below." Underneath is a text box in which the user can scroll up or down. At the top of the box is bold text reading "REAL ID END USER TERMS OF USE." About two-thirds of the way through the terms of use, which contain a few pages of text in total, are provisions in which the user agrees to binding arbitration. To advance to the next "Submit Your Application" screen, the user must check a box under the terms of use which reads "I agree." Warner clicked through this page, including the "I agree" box, on January 16, 2025, when she submitted to the Real ID background check.

## I.

Arbitration is a matter of contract. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). The Federal Arbitration Act provides that arbitration provisions in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The parties agree that Illinois contract law governs this case.

3

Contract formation requires the mutual assent of the parties and Illinois law uses an objective approach to that question. *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016). Assent is assayed through the parties' "outward expressions such as words and acts." *Bank Computer Network Corp. v. Cont'l Ill. Nat. Bank & Trust Co. of Chicago*, 442 N.E.2d 586, 591 (Ill. 1982) (citations omitted).

When considering contracts of adhesion on the internet, Illinois law asks: "(1) did the website provide reasonably conspicuous notice of the terms to which the consumer will be bound, and (2) did the consumer take some action that unambiguously manifested his or her assent to those terms?" *Domer v. Menard, Inc.*, 116 F.4th 686, 695 (7th Cir. 2024). Distilled down, the question is whether "a reasonable person in [the plaintiff's] shoes would have realized that he was consenting to" the terms of the contract. *Sgouros*, 817 F.3d at 1035. When evaluating whether a website or platform has provided reasonable notice, the 7th Circuit has directed courts to consider: "(1) the simplicity of the screen; (2) the clarity of the disclosure; (3) the size and coloring of the disclosure's font; (4) the spatial placement of the hyperlink; and (5) the temporal relationship to the user's action." *Domer*, 116 F.4th at 695.

4

## II.

Warner argues that Real ID's platform failed to adequately communicate the terms and conditions of its arbitration agreement and that circumstances in which the agreement was presented "do not support the assumption that [she] received reasonable notice of" its terms. ECF 16 at 5, 8. She argues under the first point that a user is able to click the "I agree" checkbox without reading the terms of the agreement, that nothing compelled her to scroll through the entire agreement, and that the first few terms of the agreement—about a background check—misled her into thinking that the last few would not concern arbitration. Under the second point, Warner contends that neither the title of the page ("I consent") nor the "I agree" button put her on notice that she would be agreeing or consenting to any terms governing litigation or arbitration.

Contracts of adhesion, agreed to by clicking through forms on the internet, are a far cry from the classical world of contract, where the minds of sophisticated parties meet after aggressive and intelligent dickering. This is doubly so where, as here, Warner has come to the contract not as an independent party in the marketplace but because a potential employer compelled her to use

5

Real ID's service to secure a position.[1] Nevertheless, as the factors in *Dormer* make clear, a reasonable person would have been on notice of the terms of this contract.

The screen here is simple. It contains only two fields. The "Consent Document" field is the larger of the two and dominates the screen. Unlike the text box in *Sgouros*, it displays a significant quantity of text and, given that the terms of the agreement are short, a user would have to scroll only a couple of times to reach the arbitration terms. 817 F.3d at 1032. The disclosure is clear—the whole page directs the user to consent to the terms in the box. The design of the disclosure directs the user to the box—it is the most prominent item on the page, it is set off by bold green text, and the user is required to click an "I agree" button immediately beneath it. The fourth factor from *Domer* asks about the spatial placement of a hyperlink to the terms of the agreement—here, there is no need for a link because the terms are on the same page. And the temporal relationship between the terms and the user's action related to the terms is tight. The user must click on the "I agree" button immediately following the

---

[1] Warner has not raised whether any of the provisions of the agreement, including its choice of venue, in Miami-Dade County (Real ID is an Illinois company), its $500 damages cap, or its disclaimer of "consequential, incidental, or punitive damages" are unconscionable, so I do not address those questions.

terms. Under these circumstances, I must find that a reasonable user would be on notice of the arbitration clauses of Real ID's terms of use.

As such, I grant Real ID's motion and stay this case pending arbitration.

**ENTER ORDER:**

_____

**Elaine E. Bucklo**
United States District Judge
Dated: February 9, 2026

7