IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Minjoo Cho Warner, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 25 C 14367 |
| | ) | |
| | ) | |
| Real ID, Inc., d/b/a CHCKED, | ) | |
| | ) | |
| Defendant. | ) | |

Memorandum Opinion and Order

In this action, plaintiff Minjoo Cho Warner asserted a Fair Credit Reporting Act claim against defendant Real ID, Inc., doing business as CHCKED ("Real ID"). Pursuant to their contract, Real ID moved to compel arbitration and stay this case, a motion which I granted. Warner then filed an action with the American Arbitration Association ("AAA"), but Real ID failed to timely pay its filing fee, and the AAA dismissed the arbitration. Warner now moves to lift the stay and for sanctions. I grant both motions.

1

**I.**

Warner applied for a position as a certified nursing assistant, and her potential employer offered her a job conditioned on a background check performed by Real ID. She submitted her information to Real ID's portal, at which point Real ID sent false and disparaging information to the employer, who then rescinded the job offer. Warner sued, and Real ID moved to compel arbitration. I granted that motion in February 2026 and stayed this case. *See generally Warner v. Real ID*, 819 F. Supp. 3d 931 (N.D. Ill. 2026).

On March 26, 2026, Warner filed an action with the American Arbitration Association (the "AAA"), the arbitrator designated in her contract with Real ID, and paid a $225 filing fee. On April 27, the AAA sent Warner a letter letting her know that she needed to submit a copy of her arbitration agreement with Real ID. She sent in the contract, and on May 1, the AAA sent a "case letter" to both parties which explained one point relevant here. While the arbitration agreement Warner signed provided for arbitration under the AAA's Commercial Arbitration Rules, the AAA's application of the Commercial Arbitration Rules meant that it would arbitrate the parties' dispute under the AAA's Consumer Arbitration Rules.[1] ECF

---

[1] "We note that the contract references the Commercial Arbitration Rules. According to R-1* of the Commercial Arbitration Rules,

2

22-5. The letter also noted that Real ID would have to pay a $675 filing fee by June 1 to proceed with arbitration.

On May 4, 2026, Real ID co-signed a joint status report in this case noting that "[t]he matter is currently pending assignment of an arbitrator." ECF 22-8 at 1. Real ID then failed to pay the filing fee. On June 2, the AAA closed the matter due to Real ID's nonpayment and noted that "now that the AAA declines to administer this arbitration, either party may choose to submit its dispute to the appropriate court for resolution." ECF 22-9 at 2. On June 9, Warner's counsel conferred with Real ID's counsel about filing this motion. That same day, Real ID sent a letter to the AAA objecting to its selection of the Consumer Arbitration Rules but did not accompany that letter with a check for $675. On June 19, Warner filed her motion to lift. That same day, Real ID sent in its fee to the AAA and asked for the file to be reopened. Warner objected, and the AAA declined to reopen the action.

## II.

Warner argues that Real ID has either waived its right to arbitrate or, in the alternative, that Real ID's right to arbitrate under the contract has been consummated and concluded with an order

---

the AAA applies the Consumer Arbitration Rules to disputes arising out of consumer arbitration contracts." ECF 22-5 at 2.

from the AAA allowing her to bring her claims back to federal court. She is correct on both counts.

**A.**

Arbitration agreements are contracts, and disputes over their terms are resolved according to the ordinary principles of contract. In *Morgan v. Sundance, Inc.*, the Supreme Court emphasized that the FAA's "policy favoring arbitration" is "merely an acknowledgement of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate," and that rather than elevating arbitration to some special status, the policy's aim is only "to make arbitration agreements as enforceable as other contracts, not more so." 596 U.S. 411, 417–18 (2022) (citations omitted). The *Morgan* Court rejected the tests that several circuits had devised to determine whether an arbitration contract had been waived and reiterated that ordinary waiver principles applied. *Id.* at 419. And under ordinary waiver principles, the question I ask is: did Real ID "knowingly relinquish the right to arbitrate by acting inconsistently with that right?" *Id.*

When considering waiver, I look to the totality of the circumstances, and while "several factors are considered in the waiver analysis, diligence or the lack thereof should weigh heavily in the decision." *Kawasaki Heavy Industries, Ltd. v. Bombardier*

4

*Recreational Products, Inc.*, 660 F.3d 988, 994 (7th Cir. 2011). Prejudice to the other party is not a necessary element of waiver, but "should weigh heavily in the decision." *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995).

Here, Warner filed suit and Real ID promptly moved for arbitration. But after I granted that motion and Warner filed an action with the AAA, Real ID stopped being prompt and failed to engage with the arbitration process, leading the AAA to close its case. Real ID insists that it afterwards moved with alacrity to make its payment to the AAA, but the record reflects something else. Real ID did not dispute the AAA's finding about its rules or remit payment immediately after Real ID missed the payment deadline and the AAA closed the action. Instead, Real ID only moved to dispute the AAA's rules finding when Warner's counsel reached out about reopening her federal case on June 9, 2026. And Real ID did not make a payment on that day, either, but waited again, until Warner filed her motion to lift the stay on June 19, 2026. These facts paint a picture not of a party diligently pursuing arbitration but of a party using the threat of arbitration to stymie a plaintiff's efforts to pursue relief. This is acting inconsistently with the right to arbitrate. *Morgan*, 596 U.S. at 418–19.

It is relevant in the totality of circumstances that Real ID forced Warner into arbitration by federal court order. One would expect Real ID to be especially responsive under those circumstances, and it was not. *Campbell v. Marshall Int'l, LLC*, 2021 WL 9970914, at *3 (N.D. Ill. July 23, 2021) (finding waiver where defendants failed to pay filing fees, despite defendants' later attempt to pay them, and collecting similar cases). It is likewise relevant that Warner has been prejudiced. Her case, which she filed in November 2025, has not proceeded beyond the very first stage, because of Real ID's motion to compel arbitration. She has lost months and has had to litigate that motion and now this one. This also weighs in favor of finding waiver, and I find it. *Kawasaki*, 660 F.3d at 994–95 .

**B.**

Even if Real ID had not waived its right to arbitrate, it would still be out of luck, because it has already had all the arbitration provided for in its contract, which means that a stay is no longer required by the FAA. 9 U.S.C. § 3 (providing that a court should stay an arbitrable case "until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.").

The arbitration clause of the parties' contract provides that "[i]n the event of any dispute arising out of or relating to this Agreement or the Services...claims shall be submitted to **binding arbitration** conducted by the **American Arbitration Association**." ECF 14-1 at 4 (emphasis in original). The AAA's rules required each party to pay filing fees and provided that, in the event of nonpayment of fees, the AAA reserved the right to close the case before it.[2] Real ID failed to pay and the AAA closed the case. Real ID protests that it then paid untimely and asked to reopen the arbitration but that, under the AAA's rules, Warner's objection was effective in preventing its reopening. But this is no

---

[2] Rule R-10 of the Consumer Arbitration Rules reads:

(a)   The AAA, in its sole discretion, may make the administrative determination to decline to accept a Demand for Arbitration, stop the administration of an ongoing arbitration, and/or decline to administer future cases from a party under the following circumstances

...

(ii) where a party fails to submit payment of fees requested in accordance with the Rules or Consumer Arbitration Fee Schedule.

...

(b)   In the event the AAA makes the administrative determination to cease or decline administration of a case due to any of the reasons outlined in this Rule, the parties may choose to submit their dispute to the appropriate court.

7

objection: Real ID received what it bargained for, which was arbitration before the AAA according to the AAA's rules.

The analysis in *Wallrich v. Samsung Electronics of America, Inc.,* is instructive. 106 F.4th 609 (7th Cir. 2024). There, tens of thousands of Illinois consumers filed arbitration demands with the AAA, per the arbitration clauses in their contracts, against Samsung. *Id.* at 614. Under the AAA rules for mass arbitrations, the AAA required Samsung to pay significant filing fees—in the event, $4,125,000—before it would permit the action to proceed. *Id.* Samsung refused to pay. *Id.* The AAA rules provided that in the event of a defendant's failure to pay, plaintiffs could advance the defendant's fees, to be recouped in the event of victory. *Id.* The *Wallrich* plaintiffs refused, and the AAA closed the proceedings, referring the parties, like those here, to any court of competent jurisdiction. *Id.*

The *Wallrich* plaintiffs proceeded to federal district court, but rather than bring their merits claims, they instead filed a petition to compel arbitration and asked the court to order Samsung to pay its filing fees. *Id.* The Seventh Circuit found that the district court lacked the authority to do so:

> The arbitration agreement allegedly entered into between Samsung and the consumers delegated threshold arbitration fee disputes to the AAA. The parties thus bargained for the AAA's discretion over the payment of administrative filing fees, including the consequences that would stem from a party's refusal to pay those fees.

> After Samsung refused to pay its fees, the AAA, in line with its rules (which it applies in its discretion), allowed the consumers to advance Samsung's fees. If the consumers had advanced the fees, Samsung would have arbitrated the merits of the consumers' claims. However, the consumers declined. The AAA then could have stayed the arbitration, as requested by the consumers, but it chose not to. Instead, it terminated the proceedings, opening the door for the consumers to pursue their claims in district court. Rather than take this route, the consumers sought an order compelling Samsung to arbitrate and to pay the required fees. But this request was outside the district court's authority. Samsung and the consumers' arbitration proceeded in line with their agreement. The AAA considered the dispute and terminated the arbitration within its discretion. At that point, arbitration was complete, and the district court did not have the authority to flout the parties' agreement and disturb the AAA's judgment.

*Id.* at 620. As in *Wallrich*, Real ID and Warner's "arbitration proceeded in line with their agreement." *Id.* They contracted to arbitrate according to the AAA's rules. Those rules obligated Real ID to pay a filing fee, and it did not. Those rules allowed AAA to close the case in the event of nonpayment, and it did. The rules allowed AAA to honor Warner's objection to the reopening of the case, and the AAA did. And the rules allowed the AAA to direct the parties back to this court after closure, and that is what happened. If what is good for the goose is good for the gander, then it must also be that what is good for the corporation is good for the consumer. "[A]rbitration has been had" under the terms of the agreement, and I will lift the stay. 9 U.S.C. § 3.

9

### III.

Warner has asked me to grant her attorney's fees on the basis of my inherent power as the district court. I have such power where "a party has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018) (citations omitted). That power ends, however, at making the plaintiff whole—"attorneys' fees that are imposed as a sanction...may go no further than to redress the wronged party for losses sustained." *REXA, Inc. v. Chester*, 42 F.4th 652, 673 (7th Cir. 2022).

As I wrote above, Real ID's behavior here looks exactly like a willful abuse of process—it compelled arbitration and then refused to arbitrate right up until the day that Warner filed her motion here, at which time it rediscovered its desire for arbitration. And what is telling is Real ID's failure to explain that timeline in an exculpatory way.

In the section of its response in which it contested waiver, Real ID cited several cases where courts declined to find waiver under similar facts, each time because the defendants' failure to participate in arbitration resulted from extenuating circumstances. There was *Brown v. Santander*, 2026 WL 386681, at *4–*5 (S.D. Ill. Feb. 12, 2026), where defendant's counsel encountered an electronic "snafu" which prevented timely payment

10

of arbitration fees. Also, *Simone v. Citizens Bank, N.A.*, 2024 WL 3237081, at *5 (D.R.I. June 17, 2024), where "[d]ue to circumstances beyond [defendant's] control, the payment did not post to the AAA's bank account" on time. And *Jaramillo v. TXU Energy*, 2021 WL 1177888, at *3 (W.D. Tex. Mar. 29, 2021), and *French v. Whitefeather Holdings, LLC*, 2020 WL 6383531, at *2-*3 (D. Ariz. Oct. 30, 2020), which presented comparable inadvertent failures on the defendants' parts.

Following those citations, Real ID writes that, "[a]s in *Jaramillo* and *French*, [Real ID's] failure to pay timely was not a deliberate refusal to arbitrate." ECF 25 at 3. This would seem to imply that Real ID was prevented from paying timely, like the defendants in those cases, by some circumstance outside of its control. But Real ID never provided that circumstance or explained its failure in any way. That leaves me with the only reasonable conclusion: that its failure to pay was deliberate.

**IV.**

Warner's motion to lift the stay is granted, as is her motion for sanctions, which will include the reasonable cost of preparing and litigating this motion.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge
Dated: August 3, 2026